RAY N. NOYES *vs.* ARTHUR J. GAGNON.

Essex.    November 8, 9, 1916. — January 11, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Real or Personal Property. Landlord and Tenant. Fixtures. Land Court, Decree. Evidence,* Competency, Admissions. *Equity Pleading and Practice, Exceptions.*

In a suit in equity by the lessee of one of a large number of lots of beach land, formerly owned in turn by an unincorporated association and by a corporation, against one who had purchased the fee of the lot, to restrain the defendant from interfering with two houses upon the lot which the plaintiff contended were personal property, there was evidence tending to show that the houses were built on sand, rested on posts and had no cellars, that one had a brick chimney

which was added to the house long after it was built and rested on the ground, that a chimney in the other house did not go through the floor; that leases made by the defendant's predecessors in title were of the land only and that they had treated the houses as personal property and never had made any claim to ownership of them. The judge found that the houses were personal property. *Held,* that it could not be said that the judge's finding was clearly wrong, nor could it be ruled as a matter of law that the title to the houses was in the defendant as a part of the realty.

In view of the finding above described, the case did not call for an application of the law as to fixtures.

The mere fact that, in the lease of the land upon which the buildings above described stood, the lessee covenanted to "deliver up the premises . . . in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are . . ." and that he would "not make or suffer any waste thereof; . . . or make or suffer to be made, any alteration therein," was *held* not to be conclusive against the plaintiff upon the question of the ownership of the buildings.

The mere fact that by a decree of the Land Court the title to certain land was ,registered as belonging to a lessor does not preclude his lessee from claiming buildings upon the land as his personal property.

In the suit above described, testimony of one, who was for many years the collector and treasurer of both of the former proprietors of the lots, to the effect that neither of such proprietors ever had claimed ownership of the houses upon the land, was held to be competent.

Official reports made by the same witness to his employers and showing that the rent received was for the lots only also were *held* to be competent and admissible.

The records of the defendant's predecessor in title, which was a corporation, tending to show the authority of its officers to fix rents also were *held* to be admissible in evidence in the suit above described.

In the suit above described, the testimony of one of the associates who were predecessors in title of the defendant, who also at one time was president of the corporation which succeeded the associates, to the effect that the corporation never claimed ownership in the houses upon the lots, that the houses usually were sold by the owners by bills of sale, that neither of the defendant's predecessors in title ever placed any fire insurance upon any of the houses on the beach nor upon the house in question, was *held* to be ·admissible upon the question whether the houses were personal property.

The testimony of the president of the corporation above described, that he had protested for the corporation to the tax commissioner of the Commonwealth against an assessment of the houses as property of the corporation, was *held* to be admissible as an acknowledgment on the part of the plaintiff's lessor that it did not own the houses.

It was *held,* that testimony of the assessor of taxes of the town in which the lots above described were situated, to the effect that at one time the taxes on the houses were assessed to the respective owners of the houses, and that the land was not assessed to the owners of the houses, if incompetent, did not injuriously affect the substantial rights of the defendant, and that therefore an exception by the defendant to its admission must be overruled.

An exception to the admission in evidence at the hearing of a suit in equity of a statement in writing by a witness which has no bearing upon the issues upon trial must be overruled if it appears that the witness fully explained the state-

ment and that the rights of the excepting party were not prejudiced by the evidence.

An exception to an incompetent question must be overruled if it does not appear that the question was answered directly or so as to harm the excepting party.

BILL IN EQUITY, filed in the Superior Court on September 21, 1915, by the conservator of the property of Sarah A. White, seeking an adjudication that certain buildings upon premises at Salisbury Beach, occupied by Sarah A. White as lessee, were her personal property and that the defendant be enjoined from interfering with her rights thereto.

In the Superior Court the suit was heard by *Raymond,* J., a commissioner having been appointed to take the evidence. The statement entitled "Meetings of such tenants," referred to in the opinion as written by the witness Coulson, in no way mentioned any matter relating to ownership of the buildings on the lots on the beach. The material evidence and facts found by the judge and the exceptions of the defendant are described in the opinion.

By order of the judge a final decree was entered granting the prayers in the bill; and the defendant appealed.

*A. N. Frost,* for the defendant.

*H. I. Bartlett,* for the plaintiff.

CROSBY, J. The plaintiff, as conservator of the goods and estate of Sarah A. White, brings this bill to restrain the defendant from enforcing any claim of ownership in two dwelling houses alleged to be owned by Mrs. White, or from disturbing her or those claiming under her in the use and enjoyment of the lot of land and the houses thereon before the first day of May, 1916; and for a decree that said houses are the property of Mrs. White. The defendant is the owner of the lot of land upon which the houses are situated, having acquired it by a deed from the Salisbury Beach Associates dated December 3, 1914. The lot of land so owned by the defendant is numbered "44" on a certain plan of lots and is situated at Salisbury Beach in Salisbury in the county of Essex.

Salisbury Beach consists of a large tract of land laid out and divided into lots, with streets and roads, the title to which before 1903 was vested in a corporation known as the Commoners of Salisbury. During that year the Salisbury Land and Improvement Company became the owner of the beach land including "Lot 44," and continued to own the property until it was conveyed

by the company by deed dated April 25, 1911, to Walter Coulson and others. On the same date, Coulson and others made a deed of the property to themselves as trustees of the Salisbury Beach Associates, and thereafter the property was held by the grantees under a declaration of trust.

In the two last mentioned deeds there is a provision as follows: "This conveyance is subject also to existing leases on any part thereof and to the rights of said lessees their heirs and assigns." As before stated, the defendant derived his title to "Lot 44" from the Salisbury Beach Associates by a deed dated December 3, 1914. This deed contained the following recital: "This conveyance is made subject to lease to Frank White dated Aug. 4, 1906 expiring Apr. 30, 1916."

There was evidence to show that Frank White, who was the husband of Sarah A. White, built one of the houses on "Lot 44" at least as early as 1871; that the other house, on the rear of the lot, was constructed out of an old barn three or four years before this case was heard in the Superior Court, and that the barn had been on the lot for twenty years. There is nothing in the record to show under what authority White occupied the lot before May 1, 1886, when it was leased to him by the Commoners for ten years from that date with a right of renewal.

On August 4, 1896, another lease was executed and delivered by the Commoners to White, of "Lot 44," "for the term of ten years with the right of renewal from the first day of May eighteen hundred and ninety-six."

On August 4, 1906, the Salisbury Land and Improvement Company, which had succeeded to the title to the beach, made a lease to White of "Lot 44" for the term of ten years beginning with the first day of May, 1906. Since the execution of this lease White has deceased. It is not disputed that the rights which he had under the lease and to the buildings on the lot were vested in his widow at the date of the bringing of this suit.

The case has been heard by a judge of the Superior Court who made certain findings of fact including a finding that the houses "are the property of Mrs. White and she or her conservator are entitled to control the same." All the material evidence is reported. The case is before this court upon the appeal of the defendant from a final decree in favor of the plaintiff.

An agreement has been entered into by the parties, by which it is stipulated in part that "the sole question to be tried under the bill is the title to the buildings referred to in the bill of complaint."

At the outset the question arises whether these two buildings are personal property or fixtures. This is a mixed question of fact and law, depending upon other facts and circumstances and the reasonable inferences to be drawn therefrom, including the manner in which the buildings were attached to the land and the intention of the parties. *Rowse, petitioner,* 195 Mass. 216. *Natural Autoforce Ventilator Co.* v. *Winslow,* 215 Mass. 462. There was evidence to show that "the houses are built on the sand and rest on posts, with no cellars;" that the front house "has a brick chimney, built about three years ago, which runs through the ell of the building to the ground; the chimney in the rear house is on brackets and does not go through the floor."

There was evidence that when the beach land was owned by the Commoners the buildings on lots leased were the property of the lessees, that the rent paid was for the rent of the land and did not include the structure upon it and that the Commoners, as the owners and lessors of the lots, treated the houses as personal property and never made any claim of ownership in the houses which had been built thereon by tenants.

There was also evidence to show that while the ownership of the lots was in the Salisbury Land and Improvement Company the company made no claim of title to the buildings erected on the lots, but that it was understood by both the company and the tenants that the houses were owned by the latter; that the amount of the rentals was fixed without reference to the character of the building upon the lots leased and was so fixed without reference to whether there was any house on the lot or not.

One Shaw, who was formerly president of the company, testified that he never knew of the company or of its officers ever making any claim of ownership to any of the houses on the lots.

There was also evidence to show that the Salisbury Beach Associates treated the lessees who had built houses on the lots as the owners thereof and that the lessees were allowed to remain there with the consent of the Associates; that, when sales of lots were made, tenants who had built houses were given the option

of buying the lots upon which the buildings stood or of buying less expensive back lots and removing the buildings thereto and that, when a lot was so sold to a tenant, it was sold without reference to any building which might be upon it.

The defendant testified that before he purchased "Lot 44" he knew of the lease to White and that the latter claimed to own the houses on the lot.

We do not attempt to recite all the evidence before the court bearing upon the question of the ownership of the houses placed upon the lot by White, but have considered it carefully and are of opinion that it could not be ruled as matter of law that the title to the houses was in the defendant, nor can it be found that the findings of the judge, including the finding that the houses were personal property, were plainly wrong.

The rule is well settled that fixtures annexed to real estate by a tenant become a part of it. They may be removed by the tenant during the term, but if, without having done so, he voluntarily quits the premises at the expiration of his term without any agreement with his landlord, he cannot afterwards claim them as against the owner of the land. *Wall* v. *Hinds,* 4 Gray, 256. *Bliss* v. *Whitney,* 9 Allen, 114. *Watriss* v. *First National Bank of Cambridge,* 124 Mass. 571. We have no reason to question the soundness of the rule of law as stated in *Watriss* v. *First National Bank of Cambridge, ubi supra,* but are of opinion that it is not applicable to the facts as found in the case at bar. This case is not governed by the rule relating to the removal of fixtures, because of the finding of the judge that the houses are personal property and were so considered by all the parties. The judge found that the houses are removable chattels as distinguished from fixtures. We are of opinion that such finding upon the evidence was warranted. *First Parish in Sudbury* v. *Jones,* 8 Cush. 184. *Hinckley* v. *Baxter,* 13 Allen, 139. *O'Donnell* v. *Hitchcock,* 118 Mass. 401. *Rowse, petitioner, ubi supra.* There was ample evidence to show that the different lessors and the lessees treated the buildings on all the lots as personal property. *Swift* v. *Boyd,* 202 Mass. 26.

In view of the finding that the houses are personal property, the question whether, if fixtures, the right to remove them has been lost becomes immaterial.

The recital in the leases that the lessee shall "deliver up the

premises . . . in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are . . ." or that the lessee shall "not make or suffer any waste thereof; . . . or make or suffer to be made, any alteration therein" is not conclusive upon the question of the ownership of the buildings. It is evidence bearing upon that question to be considered in connection with all the other facts and circumstances, including the character of the construction and the intention of the parties. *Manufacturers' Fire & Marine Ins. Co.* v. *Western Assurance Co.* 145 Mass. 419, 424. *Phinney* v. *Foster*, 189 Mass. 182.

The registration of the title in the Land Court is not a bar to the plaintiff's claim of ownership in the buildings. The buildings are found to be personal property. The decree of registration obviously included the land therein described and buildings thereon which were annexed to it in such manner as to have become a part of the freehold, but it did not include or affect the title to removable chattels located on the land.

The exceptions taken at the hearing before the judge of the Superior Court to his refusal to make the rulings requested by the defendant, as well as the exceptions saved to the admission and exclusion of evidence, are subject to revision by this court upon appeal by virtue of the provisions of St. 1913, c. 716, § 4, in the same manner as if they were contained in a bill of exceptions. As to the rule before the enactment of St. 1913, c. 716, § 4, see *Pigeon's Case*, 216 Mass. 51, 55.

The defendant made twenty-three requests for rulings, all of which except the third were refused by the judge; some have become immaterial, and, from what has been said, we are of opinion that none of them could have been given.

The exceptions taken at the trial to the admission of evidence may be disposed of briefly.

We are of opinion that the witness Moulton, who was collector and treasurer for many years of both the Commoners and the Salisbury Land and Improvement Company, properly could testify that no claim ever was made by either of those owners of the land that it owned any houses at Salisbury Beach. The questions put to Moulton whether houses at the beach were ordinarily transferred by bill of sale, and whether they had ever

been insured by the owners of the land, did not harm the defendant, as the witness stated in answer to both questions that he did not know. The reports of Moulton as collector and treasurer were admissible as tending to show that the rents collected were for the rent of the land and did not include buildings thereon. The admission of the records of the land company, as well as the records of its directors, showing that the executive committee had charge of the lots and was authorized to fix the rent to be paid therefor, was not error.

The witness Shaw, who for many years was one of the Commoners and afterwards was president of the land company, testified that to his knowledge the company never claimed to own the houses on the lots owned by the company; that houses upon the lots usually were sold by the owners by bill of sale; that neither the Commoners nor the land company ever had åny fire insurance upon any house on the beach and never had any insurance on the houses on "Lot 44." The whole of this evidence was admissible as tending to show that all the houses, including those on "Lot 44," were personal property and were so treated and understood by the lessors.

The testimony of Shaw that, as president and a director of the land company, he protested to the tax commissioner against an assessment of the houses on the lots at the beach as the property of the land company was admissible. It was evidence of an acknowledgment on the part of the lessor that it did not own the houses.

The testimony of Shaw, that, when the leases in question of "Lot 44" to White were signed, neither he (Shaw) nor the company nor the committee made any claim of ownership in the houses thereon, was admissible for the reasons above stated.

One Pettingill, who was an assessor of Salisbury for several years, was allowed to testify that at one time the taxes on the houses at the beach were assessed to the respective owners of the houses, and that the land was not assessed to the owners of the houses; if it be assumed that this evidence was incompetent, we are of opinion that its admission did not injuriously affect the substantial rights of the defendant. St. 1913, c. 716, § 1. See *Enfield* v. *Woods*, 212 Mass. 547.

The witness Coulson, who was a member of the Salisbury Beach

Associates, testified that he sold "Lot 44" to the defendant. He was also permitted to testify that he wrote a certain statement entitled "Meetings of such tenants." This evidence would seem to have been immaterial to any issue involved, but as the witness was allowed to explain fully his reasons for his action, it does not appear that the rights of the defendant were prejudiced by the evidence, even if it was incompetent.

This witness, also, was asked whether he told the defendant that the deed to the defendant would cover the buildings. The question does not seem to have been answered directly and so the defendant was not harmed by the answer. We do not mean to intimate that if a responsive answer had been given it would have been inadmissible.

We find no error of law on the part of the judge in his conduct of the hearing, either in his refusal to rule as requested, or with respect to his rulings upon the admission or exclusion of evidence.

The defendant contends that during the hearing the judge, without evidence, assumed certain facts, but as it does not appear that any objection thereto was taken by the defendant, by exception or otherwise, it is plain that upon this record we cannot revise such action of the court.

As the plaintiff's term under the last lease expired on April 30, 1916, the final decree should be modified by adding at the end of the second paragraph the following: "except that the plaintiff shall remove the buildings standing upon Lot 44 and owned by Sarah A. White within a reasonable time from the date of the filing of the rescript in this case." The last paragraph of the decree is also to be modified by including the costs of the appeal. As so modified, the final decree is affirmed.

*Ordered accordingly.*