INHABITANTS OF WAYLAND *vs.* SAMUEL M. CHILD & others.

JAMES GLASS *vs.* SAMUEL M. CHILD & others.

Suffolk.    March 11, 1927. — July 1, 1927.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Equity Jurisdiction,* To enforce trust.

A town may maintain a suit in equity to require payment to it of a sum
of money which had been paid by a defaulting tax collector and his wife
to their attorney, who was conducting negotiations relating to the
defalcation with the town's attorney, and which the collector's attorney
had deposited in a trust company in the joint names of himself and the
town's attorney under an agreement signed by them to the effect that
it should be applied toward restitution if a defalcation should appear.

Upon the evidence at a hearing of the suit above described, it was *held,*
that findings were warranted that action by the collector's attorney in

placing the funds, paid to him by the collector's wife on his receipt which stated merely that he had received from her "6 envelopes with her name and amt. endorsed thereon for safe keeping," in the account in the joint names of himself and the town's attorney, and in making the agreement in writing with the town's attorney, was authorized both by the collector and by his wife; and that decrees were warranted ordering the payment of such sum to the town and the application of a further sum in the hands of the collector's attorney to pay his professional fees and expenses.

BILL IN EQUITY, filed in the Superior Court on November 24, 1925, and afterwards amended, to require the defendant Child to take such steps as might be necessary to cause $7,800 of a fund on deposit with the defendant Old Colony Trust Company to be turned over to the plaintiff and that from the balance legal fees and expenses be paid. Also, a

BILL IN EQUITY, filed in the Superior Court on December 26, 1925, to require the defendants Child and Stone to turn over to the plaintiff Glass as assignee of Mrs. Gerald moneys that she had placed in the possession of Mr. Child.

In the Superior Court, the suits were heard together by *Bishop*, J., a stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 29 (1926), to take the evidence. Material facts are stated in the opinion. By order of the judge, final decrees were entered ordering the defendants Child and Stone to pay to the plaintiff town $7,800.05, to Mr. Child $1,700 for professional services and expenses, and to the plaintiff Glass $900. The Geralds and Glass appealed.

*W. R. Bigelow*, for the plaintiff Glass and the defendants Gerald.

*L. R. Chamberlin, J. Sidney Stone, & C. Bosson*, for the Inhabitants of Wayland, submitted a brief.

BRALEY, J. In the first suit the material allegations of fact in the bill are admitted by the demurrers of the defendants, Lester R. Gerald and Bernice W. Gerald. It appears that Lester R. Gerald was collector of taxes of the plaintiff town during the years from 1914 to and including 1924, when he resigned, and upon an official examination an apparent shortage in his accounts was discovered. The selectmen thereupon appointed the defendant Stone, an attorney at law, to act for and protect the interests of the

town, and the defendant Child was retained as counsel by Gerald. During the examination, negotiations between Mr. Stone and Mr. Child were begun in which Mr. Child, on behalf of Gerald, agreed with Mr. Stone, acting for the town, that if a shortage were found he would endeavor to raise sufficient funds to meet it, and there was deposited with Mr. Child by Lester R. Gerald and Bernice W. Gerald a sum of money in excess of $7,800. By an agreement in writing, signed by Mr. Child and Mr. Stone, a copy of which is annexed to the bill, $6,800 was deposited in the Old Colony Trust Company in their joint names. It was stipulated therein that "Whereas, the Town of Wayland has made claim that Lester R. Gerald, the Tax Collector of said Town, has not accounted for certain taxes which it was his duty to collect, Now Therefore, if it shall appear that the said Gerald has not accounted for such taxes as he has collected in the Town of Wayland for the years nineteen hundred and twenty-three and nineteen hundred and twenty-four, then such sum or part thereof as shall be necessary to make up any deficit of the taxes so collected for the years 1923 and 1924 shall be paid to the Town of Wayland, and if no such deficit appears, then the money shall be returned to said Child." A deficit amounting to much more than the money deposited was shown, and the plaintiff prays that Mr. Child be ordered to transfer the deposit in partial satisfaction of the indebtedness. The demurrants contend among other alleged causes of demurrer, which need not be enumerated as they are untenable, (*Raynes* v. *Sharp*, 238 Mass. 20), that the plaintiff has a plain and adequate remedy at law, and that the bill does not state a case for equitable relief.

The misappropriation of the money created a debt owed by Lester R. Gerald to the town. *Colerain* v. *Bell*, 9 Met. 499. The fund, however, was received not only from Lester and Bernice, but the town, acting by its counsel, also claimed it, because of the negotiations with Mr. Child, and to meet this situation the money had been deposited in the names of Mr. Child and Mr. Stone. The ascertainment and adjustment of these claims could be settled in equity only. G. L. c. 214, § 3, cl. 3. *New York Central Railroad* v. *William*

*Culkeen & Sons Co.* 249 Mass. 71. It is clear that the money was delivered to, and accepted by Mr. Child, to hold in trust for the ultimate benefit of the town, if Gerald was found to have been delinquent. It is not contended that Mr. Stone's appointment was invalid, (see *Thayer* v. *Boston*, 19 Pick. 511, 515), and the rights of the town in the fund could be enforced in equity. *Welch* v. *Henshaw*, 170 Mass. 409, 415. *Dunbar* v. *Broomfield*, 247 Mass. 372, 385. *Milroy* v. *Lord*, 4 De G. F. & J. 264. The case of *Loring* v. *Hildreth*, 170 Mass. 328, is distinguishable from the case at bar for reasons stated in *Welch* v. *Henshaw, supra*, and cases there cited. The interlocutory decrees overruling the demurrers are affirmed.

The plaintiff, after the defendants had severally answered, amended the bill. The amendment alleged that there was deposited with Mr. Child by the defendant Lester R. Gerald and Bernice W. Gerald, "either or both," money in excess of "the $7,800 deposited in the Old Colony Trust Company . . . , said sums being deposited for the express purpose of paying legal fees and expenses, the balance to be turned over to the plaintiff or to its representative, the defendant Stone, for the plaintiff, and that there remains in the hands of said Child certain sums representing such balance, which under the terms of deposit should be paid over to the plaintiff . . . ." But no answer or other pleading was filed to the amended bill.

The defendant, Bernice W. Gerald, however, on November 19, 1925, executed and delivered to James Glass an assignment under seal of "whatever sum or sums of money due and becoming due to me from Samuel M. Child . . . to have and to hold the same to the said James Glass with power to collect the same in my name and as my attorney hereunto duly authorized or in the name of said grantee, but in either case to the use of said grantee." The second case is a suit by Glass against Mr. Child, Mr. Stone and the Old Colony Trust Company to recover the assignor's interest in the fund. It is alleged that Mr. Child is indebted in the sum of $10,400, money had and received to the use of Bernice W. Gerald, and that, Mr. Child having no property which can

be attached or taken on execution, the plaintiff asks that the indebtedness may be established, and that Mr. Child and Mr. Stone be ordered to pay to the plaintiff all moneys held in their joint names on deposit with the trust company. The answers of the principal defendants are, in substance, the same as the allegations in the first bill as amended.

The cases were tried together on the merits, and from final decrees in favor of the contentions of the town, the defendants, Lester R. Gerald, Bernice W. Gerald and Glass appealed.

The material facts in controversy are common to both suits, and, although the evidence is reported, the credibility of the witnesses and the weight to be given to their testimony was for the presiding judge to determine, and his findings of fact, which are part of the record, will not be reversed unless plainly wrong. *Lindsey* v. *Bird*, 193 Mass. 200.

The evidence in some aspects was conflicting. It is shown by the findings, which are supported by the record, that, an official audit of the books having been made, the selectmen of the town were notified that an apparent shortage existed in the accounts of Lester R. Gerald, who had been tax collector during the years 1923 and 1924, and that after August 27, 1925, he resigned. The fact that an investigation had been made having become generally known, Gerald made public statements that, if there was a deficit, the amount was trifling, due to errors in bookkeeping, as he had not acted wrongfully in his administration of the office. He retained Mr. Child, a lawyer of standing and experience, as counsel, assuring him of his innocence, and that if an audit disclosed any deficit, it was not caused by his misappropriation, but resulted from clerical mistakes. Believing his client's statement to be true, Mr. Child advised Gerald to obtain funds to meet the shortage, if any, when it was ascertained. While the situation was somewhat inchoate, the defendant, Mr. Stone, an attorney at law, had been appointed by the selectmen to represent the town in such proceedings as might be advisable to protect it against loss. After an interview with Gerald, who referred him to his

counsel, Mr. Stone saw Mr. Child with whom he had many conversations, in which Mr. Stone urged upon Mr. Child that Gerald should make financial provisions in so far as necessary to support his statements if the final audit proved that Gerald had been mistaken. In furtherance of these suggestions, Mr. Child conferred with Gerald, urging him to take immediate action as it was expedient to have a substantial sum available to satisfy Mr. Stone. The result was, that Gerald, with his wife, Bernice W. Gerald, came to Mr. Child's office when Mrs. Gerald, who believed in her husband's innocence, gave Mr. Child $8,400, which the Geralds said they had brought in for Mr. Stone although no part was contributed by Lester R. Gerald. It was obtained by Mrs. Gerald by the withdrawal of savings bank deposits standing in her name with possibly a small amount she had borrowed from friends. A colloquy followed as to the proper course of action to be taken by Mr. Child, who said, that to pay the money to Mr. Stone directly would be a confession of guilt, and the money should be put where it could be used if a shortage was found. The payment of something for counsel fees and expenses was discussed, and that it also might be necessary to pay some of the money to Mr. Stone, and that under the circumstances, the money might be deposited in the joint names of Mr. Child and Mr. Stone, or that it should be placed in Mr. Child's safe deposit box. A receipt accordingly was given by Mr. Child which reads, "Rec'd Bernice W. Gerald 6 envelopes with her name and amt. endorsed thereon for safe keeping," and the envelopes, which contained $8,400, were deposited in Mr. Child's box in the Old Colony Trust Company. A check for $1,000 payable to the order of Mr. Child made by one Reed was later delivered to him for deposit by Lester R. Gerald, who also gave to Mr. Child in checks and cash a further sum of $1,000.05 obtained from his father and mother. The checks and cash also were deposited with the envelopes. By these transactions Mr. Child held $10,400.05, of which sum Mrs. Gerald had advanced $8,400. The defendant Mr. Child thereafter, accompanied by Lester R. Gerald, went to the trust company and without the knowledge of

Mrs. Gerald, withdrew from the envelopes $7,500, which amount he deposited in his own personal account, and at the same time he entered into the agreement with Mr. Stone as alleged in the amended bill. In accordance with this agreement, Mr. Child withdrew $6,800 of the deposit standing in his name, and redeposited this sum with the trust company in the joint account of himself and Mr. Stone, which was increased by Mr. Child depositing $1,000.05, received from Lester R. Gerald, who subsequently was indicted, convicted and sentenced for larceny from the town. The amount stolen was largely in excess of the amount received from the sureties on his official bonds and the entire amount held by Mr. Child. The defendant, Lester R. Gerald, during all the negotiations and transactions, knew of his own guilt, although prior to his trial and conviction Mrs. Gerald believed he was innocent of any wrongful conduct and that, if substantial arrangements were made for restitution, she could protect her husband from impending consequences.

It is contended, that Mr. Child had no authority to apply the money of Mrs. Gerald as shown by the foregoing review of the principal findings. But these findings are consistent with, and support the further findings that Lester R. Gerald knew of, and assented to what was being done for his benefit, and that Mr. Child acted within the general authority given to him as counsel for her husband by Mrs. Gerald, that he should take such action as in his judgment might avert or stay proceedings by the town tending to disgrace or subject her husband to charges of criminality.

The defendants, as we have said, do not question the authority of Mr. Stone to represent and act for the town, and, while their requests for rulings do not appear to have been specifically considered by the trial judge, they were in effect denied by his findings. *Noyes* v. *Gagnon,* 225 Mass. 580, 586. We have examined them, however, in so far as argued, and, under the findings, they could not have been given. G. L. c. 231, § 124.

The town having prevailed on the essential facts, the final decree in the first case awarding it $7,800.05; and to Mr.

Child $1,700 for expenses and professional services as stated in his answer, which by force of Equity Rule 6 (1926) has the same effect as a cross bill, and is unquestioned by the appellants; and the final decree in the second case, awarding Glass $900 are affirmed.

*Ordered accordingly.*