MILLER J. MEEKER & another *vs.* JOHN OSZUST & another.

Hampden. September 19, 1940. — November 25, 1940.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Real or Personal Property.*

A statement by a master, that there was no evidence that a school building, erected by a town upon land of the plaintiff with permission of his predecessors in title, was so erected under an express or implied agreement that it should remain the personal property of the town, and his finding that it was so attached to the land as to become a part of it, entitled the plaintiff to maintain a suit in equity enjoining acts of trespass as to the building by one to whom the town had purported to convey it.

BILL IN EQUITY, filed in the Superior Court on May 19, 1939.

The suit was heard by *Giles*, J., and in this court was submitted on briefs.

*L. J. Gordon*, for the defendants.

*T. H. Kirkland*, for the plaintiffs.

COX, J. This is a bill in equity to enjoin the defendants from trespassing on land alleged to be owned by the plaintiffs. The suit was referred to a master, whose reports were confirmed, and a final decree was entered adjudging

that the title to the land involved, with the buildings thereon, is in the plaintiffs, and enjoining the "defendants" from trespassing on the premises. The appeal of the "defendants" is by "John Oszust et ux alias John Oszustowicz et ux." Oszust's wife does not otherwise appear to be a party to the suit.

In about 1854, when the school district system was in operation in this Commonwealth, one of the districts in Ludlow built a schoolhouse on the southeasterly corner of land described in the deed to the plaintiffs. It stood on substantially the same location as the present building and was erected "by the consent and with the permission" of one Fuller, who then owned the land. The building remained there by permission of Fuller and that of other owners of the land, until about 1900, and was used for school purposes by the school district until 1883 "when the school district system was abolished." (See, however, St. 1869, c. 110.) From 1883 to 1900 it was used by the town. In about 1900, the town voted to build a new school building in this "district." The old building was removed and the present one was "built and placed on the land by permission of the then owner," where it was used for school purposes until 1935 "by the consent of the various owners of the land." At no time while the present building has been used for school purposes has there been any enclosure of the premises that were used as school grounds. There was no evidence before the master to show definitely what part of the land was used for a school yard, nor was there any notification prior to March 18, 1939, to the plaintiffs, or to prior owners of the land, that the town claimed to own the land on which the buildings stood.

The present building is of wood, about forty by thirty-five feet, equal in height to about that of a one and one-half story house, with an ell on one side that is used for storage. There is a small veranda on the front with steps leading to the ground. The whole building, including the ell, is placed on a brick foundation that is about two and one half feet above the ground, the base of which apparently is below the surface, and on one side of the foundation there is what

appears to be a cellar window boarded over. There are a small hallway, one large schoolroom, and a brick chimney near the front of the building extending from "beneath the floor through the roof." The master derived his knowledge of the structure as herein stated from a view that he took, and he found that the present school building "was so attached to the land as to become part of the realty." Apart from the view, there was no evidence bearing on this issue.

The plaintiffs derived their title in 1920 by mesne conveyances from Fuller, and in their deed it is stated: "Said premises are . . . subject to the rights of the Town of Ludlow, if any, to use a portion of the premises now occupied by a school house." The description of the land in all of the deeds in the plaintiffs' chain of title is the same except that in their deed only is there mention of the schoolhouse. The defendants do not now contend that the land does not belong to the plaintiffs.

The town ceased to use the building for school purposes in about 1935, and in 1937 the school committee voted that the selectmen be informed that it was no longer needed for that purpose. In 1937, the town, by vote, authorized the selectmen to sell or otherwise dispose of the building (see G. L. [Ter. Ed.] c. 40, § 3), and in 1939, after notice that by public auction the town would sell "its right, title and interest in and to the land with the building thereon, known as District School No. 2," the property so described was sold to the defendant Oszust, and he and his wife received a deed of about one quarter of an acre of land, upon a part of which the building is located and all of which is included in the land owned by the plaintiffs. In this deed of the town it is stated: "The grantor derives its title by adverse possession of the above granted premises for a period of more than twenty years having held, used and openly occupied the above granted premises as school property since before the year 1853." Acts of trespass on the part of the defendants are set out in the report, including preparations to take away a board from the school building. The master found that whatever possession of the land the town had was permissive and not adverse. In

conclusion he stated that there was no evidence presented to prove that there was an express or implied agreement that the building should remain the personal property of the town, and that the fact that the deed from the town to the "defendant" is based on the claim of title by adverse possession led him to the conclusion that there was no express or implied agreement that the building would remain the personal property of the town.

The important issue is whether the defendant Oszust has title to the school building.

The general rule is that the erection of a building on the land of another makes it a part of the realty, *Milton* v. *Colby*, 5 Met. 78, and "*Primâ facie,* dwelling-houses and other buildings belong to the owner of the land on which they stand, as part of the realty. Even if built by a party who has no interest in the land, they become a part of the realty, unless there is an agreement, express or implied, with the owner of the land, that they should remain personal property." *Webster* v. *Potter*, 105 Mass. 414, 416. *Westgate* v. *Wixon*, 128 Mass. 304. The "right of personal property in a building can only exist, when a building is erected on the land of another, with his consent, and under an express or implied agreement that the builder may remove it." *Murphy* v. *Marland*, 8 Cush. 575, 578.

There are dicta in several cases in this Commonwealth that an agreement for the right of removal, or that the buildings shall remain as personal property of him who erects them, may be implied from the fact that they were erected by permission from the owner of the land. See *Howard* v. *Fessenden*, 14 Allen, 124, 128, and cases cited; *Curtis* v. *Riddle*, 7 Allen, 185, 187. These statements seem to have had their source in what was said in the case of *Wells* v. *Banister*, 4 Mass. 514, but in *Oakman* v. *Dorchester Mutual Fire Ins. Co.* 98 Mass. 57, that case was considered, and it was said that it did not adjudge the right of the son to hold, as personal property the house built on the land of his father by consent, and that "The court had no occasion to state what were the rights of the son in or to the property itself, except to show that giving the utmost effect to the

consent of the father to build it on his land would only make it personal property, and removable by the son. Whether the facts of that case were such as to make the house personal property is a question which was not judicially determined in that case, and not presented for determination." (Page 58.) In *Harris* v. *Harris*, 153 Mass. 439, the building in question had been added to another, obviously with the consent of the landowner, so that when constructed, the whole constituted one building and could not be removed from the land without destruction of the entire building. Among other things, the court said that where there is an agreement, express or implied, between the owner of real estate and the proprietor of materials or buildings which are about to be put upon it, that when annexed to the realty they shall remain the property of the person annexing them, the law gives effect to the agreement of the parties, and the chattels, though affixed to the realty, continue to be personal property. In one of the two cases that are cited in support of this proposition, it was assumed that the building in question was personal property, and in the other, it had been erected not only with the landowner's consent, but also with a right by express agreement to remove it. It was said, at page 442: "Such an agreement is implied where a building is put upon land of another with his consent, without any agreement for its removal or for a purchase of the land, unless there is something to control the implication." But the court then went on to point out that there was no evidence of an express agreement that the building in question should be considered personal property with a right of removal, that the master found that the whole building was a permanent fixture and a part of the real estate, and that from the nature and construction of the building, it could not be inferred or implied that the landowner ever intended or consented that it should be removed or severed from the soil. And at page 443 it was said: "Upon these facts, there is nothing on which to found an implication of an agreement that the addition should be removable from the realty as personal property. It became a part of the real estate . . . ."

In the case at bar the evidence is not reported, and the master's findings of fact are conclusive unless it appears from the report itself that they are plainly wrong. This court must decide the suit upon the report in accordance with its own judgment. *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24. *General Fruit Stores, Inc.* v. *Markarian,* 300 Mass. 90. The master's finding that the building was so attached to the land as to become a part of it was warranted, and it does not appear that his finding was not warranted to the effect that whatever possession the town had of the land was permissive and not adverse.

We are of opinion that his statement that there was no evidence presented to prove that there was any express or implied agreement that the buildings should remain the personal property of the town is controlling, despite his finding that the present building was erected by permission of the then owner of the land. It is apparent from an examination of the first report that was filed that the master was considering the sole question whether the town had acquired title by adverse possession to any portion of the land upon which the schoolhouse stood. He found that it had not, and his subsidiary findings as to the consent of the owners of the land that the two school buildings might be erected and that, after they were erected, they were used for school purposes by the consent of the various owners of the land until 1935, were directed to the question of adverse possession and not whether the present school building remained personal property. When this report was filed, the defendants objected to it and the case was recommitted to the master, directing him to report solely upon two issues: (1) Is the present school building personalty or did it become part of the realty? (2) If the present building became a part of the realty, was there an express or implied agreement as between the town and the owner of the land, that the building remain personal property of the town? It was in his supplementary report that the master found that the building was so attached to the land as to become a part of it, and it was there that he made his statement as to the absence of any evidence of an express or

implied agreement. In *Madigan* v. *McCarthy*, 108 Mass. 376, where the ownership of a substantial building constructed upon a stone foundation and over a cellar was involved, it was said that *prima facie* such a building is a part of the realty and belongs to the owner of the land on which it stands. "The burden of proof is upon those who claim that it is personal property, to show that it retains that character." (Page 377.)

We must assume, as we do, in the absence of anything appearing to the contrary, that the master not only followed the direction to him in the interlocutory decree recommitting his report, but also that he correctly instructed himself as to the law. *First National Bank of Haverhill* v. *Harrison*, 271 Mass. 258, 263. By this interlocutory decree, not only his attention but also that of the parties to the suit were specifically directed to the question whether there was an express or implied agreement relating to the schoolhouse, and from the supplementary report it does not appear that there was.

In the circumstances it is unnecessary to consider whether the dicta, hereinbefore referred to, state the law correctly. There is nothing in the facts of the case that prevents the application of the general rule that the building in question is a part of the realty and belongs to the plaintiffs. It is not contended that the plaintiffs are not entitled to relief if the building belongs to them. The final decree should be modified by definitely describing the land which the town, by its deed, purported to convey to the defendant Oszust and his wife, title to which is now in the plaintiffs. In all other respects it is affirmed with costs.

*Ordered accordingly.*