LISA R. WARD *vs.* ANGELO C. PERNA & another.[1]

No. 05-P-1320.

Essex. May 19, 2006. - July 11, 2007.

Present: PERRETTA, BROWN, & GELINAS, JJ.

*Landlord and Tenant,* Fixture.

In a civil action where a house was originally bought from the owners of the
land on which the house was situated (the landowners) as personal property
under a written agreement but, as a result of fraudulent misrepresentation
by the landowners, became affixed to the land (by virtue of substantial
improvements that the buyers made to the house) and could not be removed
without damage to the building, the landowners were properly liable for
damages in the amount of the value of the house — rather than just the
value of the improvements to the house — offset by the amount the buyers
owed for the use and occupancy of the land on which the house was
situated. [535-541]

SUMMARY PROCESS. Writ in the Northeast Division of the Hous-
ing Court Department dated July 11, 2002.

After transfer to the Superior Court Department, the case was
tried before *David D. Kerman,* J.

*Leonard F. Femino (Jerald A. Parisella* with him) for the
defendants.

*Meirwyn I. Walters* for the plaintiff.

PERRETTA, J. These cross appeals present the question of the
amount of damages due the Pernas, who purchased from the
plaintiff Lisa Ward's (Ward's) husband and his mother a cottage
situated on property now owned by Ward (as a result of inherit-
ance) and leased to the Pernas. After the expiration of the lease,
Ward brought a summary process action against the Pernas, who
countered with a cross claim for damages in the amount of the
fair market value of the cottage. Although Ward prevailed on her
summary process complaint, the Pernas were awarded damages

[1]Beverly J. Perna.

in the amount of the value of their improvements to the cottage less the amount of rent owed Ward. Both parties claim error in the net amount of the award. We modify the amount of damages and affirm the judgment as modified.

1. *The facts.* Title to the land upon which the Pernas' cottage is situated came to Ward through her husband, John Ward (John), the son of Phillip Ward (Phillip) and Marion Ward (Marion), who purchased the land in 1950. At that time, twenty-two cottages were located on the land. In April, 1971, after Phillip's death, Marion and John purchased the cottage at issue here. John acquired ownership of the land after Marion's death, and Ward became the sole owner of the land after John's death in May, 1999.

In 1971 the Pernas purchased the cottage from Ward and her husband and executed a ten-year lease for the land with an option to extend it for an additional ten years upon the expiration of the first term. The lease also gave the Pernas a right of first refusal to purchase the land should the landowner sell it before the lease expired. The Pernas paid Ward and her husband $18,103.20 for the cottage. For the first five years of the lease, the Pernas paid rent in the annual amount of $200. The rent increased to the annual amount of $300 during the next five years.

Throughout the years, the Pernas made substantial improvements to their cottage. For example, they poured a foundation, added three new rooms, finished the basement, replaced windows, refurbished a bathroom, and repaired the roof. They also improved the landscaping. Ward and her husband knew of the improvements, and, both before and after the sale of the cottage, they had expressed to the Pernas by words and actions that they would offer to sell the land to them before their lease expired.[2]

In April, 1981, the Pernas' lease expired.[3] Nonetheless, they remained on the land and paid rent, which Ward and her hus-

---

[2]Beverly Perna testified at trial that the attorney for Ward and her husband had told the Pernas that the price would not be arbitrary but would be a price set by Ward and her husband, by an appraiser chosen by the Pernas, and by a third independent appraiser.

[3]Ward claims that the lease was renewed or extended in 1981 and that the lease in fact expired on April 20, 1991. The claim conflicts with the judge's finding, see discussion *infra*, that the parties did not succeed in negotiating a renewal of the lease. See Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974). We ac-

band accepted but which Ward now contends was far less than the amount due. Between 1991 and 2002, Ward and her husband rejected all the Pernas' tendered rent payments. The Pernas remained on the land, placing the proffered rent payments into an escrow account and continuing to pay the real estate taxes on the land and their cottage.

On July 11, 2002, Ward brought an action in the Housing Court, seeking to evict the Pernas from the property. The Pernas countered with claims for the value of the cottage or the value of the improvements made to it, and the matter was transferred to the Superior Court.[4]

2. *The trial.* At trial the Pernas took the position that their improvements to their cottage resulted in its affixation to the land and its transformation into part of the real property. They claimed that this transformation, as matter of law, entitled them to the fair market value of the cottage. They also claimed that because Ward and her husband induced the Pernas to make improvements to their cottage, they were entitled to the value of their cottage or the value of their improvements.

In response to special questions as to whether the cottage was a fixture or personal property, see Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974), the jury answered that (1) the parties did not, by mutual agreement or conduct, change the character of the cottage from "goods and chattels" and "personal property" to a "fixture" that is part of the real property; (2) it was possible to remove the cottage from the land without any material damage to the land; and (3) it was not possible to remove the cottage from the land without materially damaging the cottage. Based on the jury's answers, the judge ruled that the cottage was affixed to the land but that, as matter of law, Ward was not liable to the Pernas for the fair market value of their cottage. In addition, based on the jury's finding in answer to the special questions that Ward and her husband had made statements that wrongfully induced the Pernas to make improvements to their cottage, the judge ruled that Ward was liable to them for the value of those improvements, $55,200. He next determined that

---

cept the judge's findings of fact unless clearly erroneous.

[4]The action was transferred to the Superior Court, and, pursuant to G. L. c. 211B, § 9, a judge of the Housing Court was designated to preside over the trial.

the Pernas were liable to Ward in the amount of $43,587.35 for the value of the use and occupation of the land through December 31, 2005, less the amount of rent actually paid. The net amount of damages awarded to the Pernas was $11,612.65.[5]

3. *The issues.* On appeal, the Pernas argue that because the judge determined, based on the jury's answer to a question in the special verdict, that their cottage is a fixture, they are entitled, as matter of law, to the full fair market value of their cottage. Ward argues that, under the jury's answer to a special question, the building remained personal property, and the Pernas have only a right to remove it. She also argues that there was no basis in the evidence upon which to hold that the Pernas were wrongfully induced to make improvements to their cottage and no basis in the evidence to determine the value of the Pernas' improvements to value of the cottage.[6]

4. *Discussion.* Both the jury's answers to special questions and the judge's decision attempted to resolve the main issue at trial: Did the extensive improvements to the cottage render it a fixture? The judge opined, and, in a laudable abundance of caution, so informed counsel, that some inconsistency might arise in the jury's answers to the special questions whether the cottage could be removed from the land and whether the cottage by mutual agreement or conduct had become a fixture. Even though no objections were raised to any of the special questions, the judge instructed counsel to be alert for any factual, but not legal, inconsistencies in the jury's answers. However, it was not until after the jury were discharged that counsel raised

---

[5]Ward prevailed on her summary process complaint but that judgment is not in issue.

[6]Before taking up the Pernas' claims, we quickly dispose of Ward's contention that because their notice of appeal was not filed within the ten-day period set out in G. L. c. 239, § 5, for appeal from a summary process judgment, it must be dismissed. The primary issue at trial was whether the Pernas' improvements to their cottage rendered it a fixture, not whether there was a claim of right to the use and occupancy of Ward's land. For the reasons discussed in *Kobayashi* v. *Orion Ventures, Inc.,* 42 Mass. App. Ct. 492, 504-505 (1997) (appropriate to apply thirty-day appeal period where jury heard facts of both summary process action and contract action), we conclude that the applicable appeal period is that set out in Mass.R.A.P. 4(a), as amended, 430 Mass. 1603 (1999). As the Pernas' notice of appeal was filed within that time period, it was timely filed.

concerns about potential inconsistencies in the jury's responses to the very questions about which the judge had alerted counsel. Nonetheless, the judge assured counsel that he would resolve the problem.

Our analysis of the claims raised on these cross appeals begins with the explanation of Mass.R.Civ.P. 49(a) set out in *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 800-801 (1987):

> "Under rule 49 (a), the jurors return answers to each question or each issue submitted to them. The jurors do not return a general verdict. The answers to the questions or issues submitted are considered a special verdict consisting of 'a statement of facts the jury have found from which the judge determines the appropriate judgment.' *Commonwealth* v. *Licciardi*, 387 Mass. 670, 675 (1982). In determining whether there is an inconsistency in the jury's answers, the answers are to be viewed in the light of the attendant circumstances, including the pleadings, issues submitted, and the judge's instructions. See *Bates* v. *Jean*, 745 F.2d 1146, 1151 (7th Cir. 1984), citing *Gallick* v. *Baltimore & O.R.R.*, 372 U.S. 108, 118-122 (1963). See also 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2510, at 516 (1971 & Supp. 1986). If the jury's answers can be harmonized, they must be resolved so as to harmonize them. Cf. *McCue* v. *Prudential Ins. Co.*, 371 Mass. 659, 664 (1976), citing *Atlantic & Gulf Stevedores, Inc.* v. *Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962); *Holder* v. *Gilbane Bldg. Co.*, 19 Mass. App. Ct. 214, 218 (1985). Accord *Alverez* v. *J. Ray McDermott & Co.*, 674 F.2d 1037, 1040 (5th Cir. 1982). See generally 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure, *supra* at 515-516. If the answers cannot be harmonized with the evidence and the instructions, and the jurors have not been discharged, then the jurors must be instructed to reconsider their answers to the special questions. If the jurors have been discharged and cannot be reinstructed, a new trial is required because it is the jurors' constitutional responsibility to resolve the facts."

To the extent any inconsistencies in the jury's responses to the special questions existed, we conclude that they were harmonized by the judge on the basis of the pleadings, the issues

presented at trial, the evidence, his instructions to the jury, and the law. See *Solimeme* v. *B. Grauel & Co., KG, supra.* See also *Gauvin* v. *Clark,* 404 Mass. 450, 453 n.4 (1989).

We begin with the basic principle of law that, generally, the erection of a building on the land of another makes it a part of the realty, *Meeker* v. *Oszust,* 307 Mass. 366, 369 (1940), unless there is an agreement, express or implied, that the building will remain personal property and that the owner of the building may remove it. *Ibid.* See generally *Madigan* v. *McCarthy,* 108 Mass. 376 (1871) (burden of proof is on those who claim house built on land is personal property); *Meeker* v. *Oszust, supra* at 370-372 (building placed on brick foundation standing about two feet above ground with base below surface "was so attached to the land as to become part of the realty," and general rule applied that it belonged to owners of land). Compare *Titcomb* v. *Carroll,* 287 Mass. 131 (1934) (dining car with wheels brought onto land; pair of wheels was subsequently removed, and car was later attached to wall; car was nonetheless moveable and did not become affixed to realty).

In the present case, the cottage was subject to an express agreement that it was owned separately and was personal property. However, the substantial renovations made by the Pernas, including the pouring of a foundation, caused it to be so attached to the ground that, as found by the jury, it could not be moved without materially damaging the building. The ruling by the judge that, in accordance with this finding by the jury, the house had become affixed to the land is correct under the principles summarized in *Stone* v. *Livingston,* 222 Mass. 192, 194-195 (1915), which described three types of cases:

"1. Those where the chattel has been so affixed that its identity is lost, or so annexed that it cannot be removed without material injury to the real estate or to itself. . . .

"2. Those articles which are manifestly furniture as distinguished from improvements. . . .

"As regards these two classes the facts rebut all other evidence of intention to the contrary.

"3. Those cases where intention is the controlling fact . . . ."

In his decision harmonizing the jury's responses to the special questions the judge concluded that a landowner is liable to a

lessee for improvements to a structure affixed to the land only if the lessee held the land under a title the lessee believed to be good at the time of the improvements that caused the fixture to become affixed to the land, see *Noyes* v. *Ambler*, 296 Mass. 524, 528, 530-531 (1937), citing *Mason* v. *Richards*, 15 Pick. 141 (1833). The judge ruled that G. L. c. 237, § 16, was inapplicable to the Pernas' claim for the value of the cottage. That statute, as appearing in St. 1973, c. 1114, § 227, provides:

> "If the land demanded has been actually held and possessed by the defendant and by those under whom he claims for six years next before the commencement of the action, he shall, if judgment is against him, be entitled to compensation . . . for the value of any buildings or improvements made or erected on the land by him or by any person under whom he claims."

In *Mason* v. *Richards*, 15 Pick. at 141, a nephew lived with his aunt and uncle on a farm owned by the aunt. Expecting to inherit the land from his aunt, the nephew improved buildings on the land. When the aunt's will was rejected by a judge, the nephew brought an action under the predecessor statute of G. L. c. 237, § 16, claiming that he was entitled to recover the value of his improvements. In rejecting the nephew's claim, the court held that he was not entitled to recover the value of his improvements under the statute because he had not occupied the land adversely to his aunt and uncle. In the present matter, no rights by adverse possession are claimed, and the judge's ruling that G. L. c. 237, § 16, did not apply to the Pernas' claim was therefore correct. However, this does not as matter of law conclusively determine to what damages, if any, the Pernas are entitled here.

Generally, "fixtures annexed to real estate by a tenant become a part of it" unless they are removed by the tenant before he "voluntarily quits the premises" at the end of the lease term. *Noyes* v. *Gagnon*, 225 Mass. 580, 585 (1917). This rule, however, does not apply to buildings that are "personal property" or "removable chattels as distinguished from fixtures." *Ibid.* In such a case, the right to remove the chattels is not lost even if they have not been removed before the end of the lease. *Ibid.*

The present case involves an unusual situation in which the

house was originally bought from the landowners as personal property under a written agreement but, as a result of misrepresentation by the landowners, according to the jury's findings, is now affixed to the land and cannot be removed without damage to the building[7]; and the Pernas claim damages resulting from reliance on the misrepresentation.[8] The judge determined the damages to the Pernas to be $55,200, the value of the improvements, as found by the jury, made by the Pernas to the cottage; this amount was offset by the amount owed by the Pernas for the value of the use and occupation of the land through December 11, 2005.

Ward claims on her cross appeal[9] that we should vacate the award to the Pernas of the value of the improvements to the cottage. She argues that the determinations that the Pernas' improvements to the cottage were wrongfully induced and that the value of those improvements was $55,200 were clearly erroneous.[10]

There was evidence to support the jury's finding that in deciding to improve their cottage, the Pernas could have relied reasonably on the assurances from Ward and her husband that the Pernas would be given the opportunity to buy the underlying land. Ward and her husband knew of the improvements to the cottage, and solicited the Pernas' support and participation at a town meeting for the request by Ward and her husband for a subdivision of their land for the purpose of offering it for sale.

---

[7]In view of the determinations that the cottage was a fixture and cannot be moved without materially damaging the building, we need not consider Ward's contentions — including her contention that the Pernas should remove the cottage — that are based on the fact that the jury found the cottage to be personal property. We also have no need to consider the question addressed in *Southern Mass. Broadcasters, Inc.* v. *Duchaine*, 26 Mass. App. Ct. 497, 499–500 (1988), whether a claimant had attempted within a reasonable time to remove a structure that was physically removable without material damage.

[8]Cf. *Korbe* v. *Barbour*, 130 Mass. 255, 259 (1881) (because of prior agreement that building erected as part of bakery by tenant was personal property, action for conversion could be maintained where landowner refused to permit removal of building).

[9]See notes 6 & 7, *supra*, regarding other claims by Ward.

[10]Contrary to Ward's contention, there was evidence to support the determination that the value of the improvements made by the Pernas was $55,200: there was evidence of the value of the cottage before and after the improvements, the nature of the improvements, the amount of the square footage added to the cottage, and the value of each square foot.

Further, the Pernas knew that Ward and her husband had made offers to other neighboring landowners to sell them the land beneath their homes.

Generally speaking, fraud is a question of fact. See *Massachusetts Elec. Co.* v. *Pacific Natl. Inv. Corp.*, 9 Mass. App. Ct. 752, 753-754 (1980). Here the judge correctly instructed the jury on all the elements of inducement, and the jury in response to the special questions answered that Ward and her husband had wrongfully induced the Pernas to make improvements to the cottage. As this verdict was supported by testimony, as well as other evidence, the judge did not err in concluding that the landowner was liable to the building owner for damages.

In determining damages, the basic rule is that liability for a fraudulent misrepresentation inducing action is for the "pecuniary loss caused by [the] justifiable reliance upon th[at] representation." Restatement (Second) of Torts § 525 (1977). The damages include loss suffered "as a consequence of . . . reliance upon the misrepresentation." *Id.* at § 549(1)(b). The Pernas contend that their actual loss is not just the cost of the improvements, but the loss of the value of the entire house, as they are now unable to move it as a result of reliance on the misrepresentation and are forced to abandon it.[11] We agree, but conclude that Ward's contention is correct that the jury's finding of $170,000 for the value of the building is not correct based on the evidence and that, based on the testimony of the Pernas' expert, the value instead is $120,000.[12,13]

---

[11]Alternatively, the Pernas argue they would be entitled to damages on a theory of unjust enrichment — an argument not without merit — for the value of the house, which they bought from Ward and her husband and are now forced, as a consequence of actions taken in reliance on the misrepresentation by Ward and her husband, to return to Ward. They point out that unless they are awarded the value of their house, Ward would receive a property worth $450,000, considerably more than the $330,000-$350,000 value of the land alone, while the Pernas would lose the equity in their house. See *Santagate* v. *Tower*, 64 Mass. App. Ct. 324, 329 (2005) (unjust enrichment is "retention of money or property of another against the fundamental principles of justice or equity and good conscience").

[12]The expert's testimony included both amounts; the discrepancy appears to arise from the fact that $170,000 represented the value of the house with a new septic system whereas $120,000 represented the value without a new septic system, its condition as of the time of trial.

[13]Ward also alleges several other bases for disturbing the damages award.

Accordingly, the judgment in the civil action is to be modified by striking the amount of damages and replacing that amount with a new amount representing the value of the house ($120,000) offset by the amount owed by the Pernas for the use and occupancy of the land. As so modified, the judgment is affirmed.

*So ordered.*

We need not discuss each of these claims. Some have become moot in light of what we have said and some are unaccompanied by argument within the comprehension of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Morgan* v. *Laboratory Corp. of America*, 65 Mass. App. Ct. 816, 821 n.6 (2006) ("The mere assertion of a proposition without citation does not constitute appellate argument"). It is enough to state that the judge's determinations were based on the evidence and the jury's responses to the special questions.