SOUTHERN MASSACHUSETTS BROADCASTERS, INC. *vs.*
PAUL A. DUCHAINE & another.[1]

No. 87-1267.

Bristol. September 16, 1988. — October 27, 1988.

Present: DREBEN, CUTTER, & FINE, JJ.

*Real or Personal Property. Personal Property,* Attachment to real estate.
*Landlord and Tenant,* Fixture. *Conversion.*

At the trial of a claim by the lessee of certain real estate alleging that its lessors
had converted and used a radio tower placed on the premises of the
lessee, which resulted in a jury verdict establishing, in favor of the
lessee, that the tower was physically removable without causing material
injury to the real estate, that the lessee became the owner of the tower
sometime before its lease commenced, and that the lessee at all relevant
times intended to remove the tower, the judge correctly allowed the
lessors' motion for judgment notwithstanding the verdict, where, al-
though the lessee had the right to remove the tower, its claim of that
right more than two years after termination of the lease was untimely,
and where there was no evidence that the parties had made an agreement
permitting late removal or that a timely claim or effort to remove the
tower would have been futile. [498-501]

CIVIL ACTION commenced in the Superior Court Department
on October 1, 1982.

The case was tried before *George P. Ponte,* J.

*Edward D. Hicks* for the plaintiff.

*Patricia A. Harrington* for the defendants.

FINE, J. The Duchaines own real estate on Pope's Island
in New Bedford which they leased to Southern Massachusetts
Broadcasters, Inc. (Southern), for the period September 1,
1975, to August 31, 1980. Numerous claims were made in
cross actions between the parties, but this appeal concerns only
Southern's claim that the Duchaines converted and used a radio

[1] Maurice C. Duchaine.

tower belonging to Southern and that Southern is entitled to damages or to an accounting. The tower, used for some time by Southern to transmit radio broadcasts, is a 390 foot steel-frame structure standing on three legs attached by iron bolts to five-foot-square cement foundations.

In a consolidated trial of all the claims, first the conversion claim was tried to a jury, and later the accounting claim was heard by a judge. The jury answered "no" to a special question asking: "Does the jury find by a fair preponderance of the evidence that the tower located on Pope's Island was so annexed to the land owned by [the] Duchaine[s] that it became part of the land?" The jury determined the fair market value of the tower on August 1, 1980, to have been $65,000, and found for Southern in that amount. Judgment entered accordingly. The judge subsequently ruled, however, that because Southern failed to remove the tower from the leased premises before the termination of the lease, and because there was no agreement that the tower could remain on the premises, Southern could not recover damages from the Duchaines either on a conversion theory or by way of an accounting. On the basis of that ruling he entered judgment for the Duchaines on the claim for an accounting which he heard jury-waived, and he ordered judgment notwithstanding the jury's verdict for the Duchaines on the conversion claim. Southern contends on appeal that in making the ruling and in acting on the motion the judge erred both substantively and procedurally. We affirm the judge's action.

As the parties have not reproduced the judge's instructions to the jury in the record on appeal, we do not know precisely how the issue raised by the special question was presented to the jury. Recognizing that Southern prevailed before the jury, we interpret the special verdict as favorably to Southern as the words of the question and the evidence reasonably allow. There was evidence concerning the characteristics of the tower and how it was attached to the land. There was also conflicting evidence on the questions of the ownership of the tower and the understanding of the parties as to their respective rights in it. It is not disputed that before the lease term began the tower

had become bolted to the concrete platform. There is no reason, therefore, to assume that the jurors were given the option of finding that the tower was the kind of personal chattel to which the law of fixtures had no application. The distinction reasonably to be drawn was between a fixture which, although attached to the real estate, would have been removable by the tenant and one which the tenant would not have had the right to remove because it had become part of the real estate. See *Consiglio* v. *Carey*, 12 Mass. App. Ct. 135, 138-139 (1981).

That question is one of fact, and, so long as the fixture is physically capable of being removed without causing material injury to the real estate, the question turns upon the intent of the owner of the fixture. See *Bay State York Co.* v. *Marvix, Inc.*, 331 Mass. 407, 411 (1954). We interpret the jury verdict as establishing that the tower was physically removable without causing material injury to the real estate, that Southern became its owner sometime before the lease commenced, and that Southern at all relevant times intended to remove it. The jury, thus, placed the radio tower in the category of fixtures which, although attached to the real estate, had not become annexed to and part of it. In those circumstances, Southern had the right to remove the tower so long as it acted in a timely manner in doing so.

Ordinarily, when a tenant voluntarily quits leased premises, property affixed to the real estate must be removed no later than the date on which the lease terminates. See *Whiting* v. *Brastow*, 4 Pick. 310, 311 (1826); *Bliss* v. *Whitney*, 9 Allen 114, 115 (1864); *Noyes* v. *Gagnon*, 225 Mass. 580, 585 (1917); *Wright* v. *Michelman*, 246 Mass. 401, 403 (1923); *Looney* v. *Trimount Theatres, Inc.*, 282 Mass. 275, 277 (1933); *Consiglio* v. *Carey*, 12 Mass. App. Ct. at 138. Underlying the general rule is a concern that property owners have the full possession of their premises once a lease terminates, and, also, a recognition that tenants know when their leases are to terminate and ought to be able to remove their fixtures by that time. See Restatement (Second) of Property, Landlord & Tenant § 12.3 comment b (1977); Brown, The Law of Personal Property § 16.11 (Raushenbush, 3d ed. 1975). Where the removal of a

structure of the magnitude of the tower in question is involved, it may be appropriate to soften the ordinary rule to allow a tenant some reasonable additional — but brief — period after vacating the leased premises to remove the structure. See Restatement (Second) of Property, *supra,* § 12.3 comment f. On the facts of this case, however, we need not consider the wisdom of such a relaxation of the rule.

Southern voluntarily abandoned the leased premises and commenced operating its radio station from another location in July of 1980, more than a month before the lease terminated. Southern admitted that no steps were taken to remove the tower around the time the premises were vacated or within the years that followed. Indeed, two and a quarter years elapsed after Southern left the premises before it claimed a right to the tower in October, 1982, by bringing the instant action against the Duchaines. There was no evidence of any agreement between the parties permitting late removal. In the absence of such an agreement or of some extraordinary circumstance, a tenant's claim of a right to remove a radio tower more than two years after termination of a lease is untimely.

Southern contends that the case is not governed by the ordinary rule requiring prompt removal as the Duchaines' conduct excused Southern from removing the tower. Southern relies, first, on brief testimony that, in the fall of 1979, in the course of negotiations with the Duchaines' attorney for a new lease, an official of Southern made a demand for the tower which was refused. The witness did not relate the conversation. That testimony was not sufficient proof that removal of the tower in July or August of 1980 would similarly have been refused or would have been impossible. Nor can it be assumed from the fact that the tower was surrounded by land belonging to the Duchaines that Southern would have been physically prevented from making a timely attempt to remove the tower. Finally, Southern relies on the fact that the Duchaines had sued Southern's predecessor in interest in January of 1980 for breach of the lease. Nowhere in the complaint in that case, however, do the Duchaines assert any right to keep the tower. The contention that a timely claim or effort to remove the tower

would have been futile, therefore, is not borne out by the evidence.

As the judge's ruling was correct, that Southern relinquished its right to the tower by leaving the leased premises without making a timely effort to remove it, it is unnecessary for us to reach Southern's contentions on appeal relating to the accounting.

We deal summarily with Southern's procedural contentions. Whether or not the Duchaines' motions for directed verdict and judgment notwithstanding the verdict, although not expressly based on the relinquishment theory, were adequate to raise that issue, Southern failed to object on grounds of lack of specificity, or on any other grounds, to the judge's consideration of the relinquishment issue on the motion for judgment notwithstanding the verdict. Nor was Southern prejudiced in any way by the judge's consideration of that issue on the motion for judgment notwithstanding the verdict as Southern had the opportunity to submit a brief and argue it fully before the trial court. In these circumstances, the right to raise the procedural point on appeal was waived. See *Soares* v. *Lakeville Baseball Camp, Inc.*, 369 Mass. 974, 975 (1976).

*Judgment affirmed.*