JULIE M. CHAPMAN & others[1] *vs.* DAVID L. KATZ & others.[2]

No. 04-P-1702.

Middlesex. December 14, 2005. - March 29, 2006.

Present: GREENBERG, DOERFER, & KATZMANN, JJ.

Further appellate review granted, 447 Mass. 1104 (2006).

*Consumer Protection Act,* Lease. *Contract,* Lease of real estate, Performance and breach. *Words,* "Trade fixture," "Structure."

Commercial tenants who permitted their subtenant to erect an automated teller machine (ATM) kiosk on leased property without the owners' consent did not breach the lease contract, where the ATM kiosk constituted a trade fixture under the terms of the lease, and consequently, the tenants were not required to seek the owners' permission before its construction. [828-831]

Where, in a civil action alleging violation of G. L. c. 93A, § 11, by commercial tenants who permitted their subtenant to erect an automated teller machine kiosk on leased property without the owners' consent, the jury found that the tenants and subtenant had committed an unfair or deceptive practice, the judge's decision not to award attorney's fees was proper, given that the owners suffered no harm from the unfair or deceptive act. [831-832]

CIVIL ACTION commenced in the Superior Court Department on March 10, 1998.

The case was tried before *Linda E. Giles,* J.

*Philip Y. Brown (Timothy P. Frawley* with him) for the plaintiffs.

*Douglas G. Moxham* for David L. Katz & another.

*Evans Huber* for Banknorth, N.A.

KATZMANN, J. In this commercial lease dispute, all parties appeal from the judgment. A Superior Court judge granted declaratory relief in favor of the plaintiffs (owners) terminating the lease, but at the same time required the plaintiffs to pay restitution to defendant Banknorth, N.A. (Banknorth), a subtenant, for

[1]Ann S. Webster and Carolyn Patti Mijares.

[2]The Camera Company, Inc., and Banknorth, N.A.

improvements it made to the property. The judge also entered judgment in favor of the defendants on the remaining counts of breach of contract and violation of G. L. c. 93A, § 11. While the parties press a number of claims on appeal, we essentially focus on the central, dispositive question, which requires that we interpret the interplay of the concepts of "trade fixture" and "structure" under the lease in issue.

The owners, as lessors, contend that defendants David L. Katz and The Camera Company, Inc. (collectively tenants), as lessees, breached the lease when they permitted their subtenant, Banknorth, to erect an automated teller machine (ATM) kiosk on the premises without the owners' consent.[3] The terms of the lease are generally not in dispute. The tenants were not prohibited from repairing or improving the property under the lease. "[B]uildings, structures, additions, alterations and improvements" made by tenants or subtenants become the property of the owners at the termination of the lease, but "trade fixtures" installed by tenants or subtenants may be removed. Any damage caused by the removal must be repaired by the tenants. The lease permitted an initial structure to be erected on the property, but thereafter prohibited any "future buildings or structures . . . upon the demised premises during the entire term . . . or any subsequent renewal term unless approved in writing by the Lessor, which approval shall not be unreasonably withheld."[4] The lease also contained a clause permitting the owners to terminate the lease after providing the tenants with thirty days' written notice of a failure to perform an obligation under the lease, so long as the tenants failed to remedy the default within the thirty days (a so-called "default clause"). As a threshold matter, at the heart of the dispute between the parties regarding the lease is the question whether the ATM kiosk is a "structure," requiring the consent of the owners, or a

[3]The plaintiffs own the commercial property located on Route 9 in Natick that is the subject of the lease. Defendants Katz and The Camera Company, Inc., are the tenants of the property pursuant to a lease beginning on October 17, 1974, with a term of twenty years, and an option for the tenants to renew for up to four successive ten-year periods. Banknorth currently occupies the property as a subtenant.

[4]The lease did not require approval for future improvements or alterations to the property.

"trade fixture," which does not require such approval. As constructed, the ATM kiosk is simply an ATM on a concrete pad, under a free-standing canopy, and in the drive-up lane in the parking lot.

The owners sued, claiming breach of contract and violation of G. L. c. 93A, § 11, and requesting a declaratory judgment that the lease had been terminated. The owners argued that the defendants materially breached the lease by failing to gain their consent before constructing the ATM kiosk. They also argued that the defendants violated c. 93A by falsely representing to the town of Natick that they were the agents of the owners. There was no evidence of any diminution in use or value of the property due to the construction. A Banknorth employee testified that, upon request, the ATM kiosk would be removed when the bank departed the premises.

The jury answered several special questions, finding that the tenants had materially breached the lease, that the owners had not unreasonably withheld consent, and that the tenants and Banknorth had wilfully or knowingly committed unfair or deceptive business practices. However, the jury also found that no damages resulted from either the breach of contract or the unfair or deceptive behavior. Because there were no damages, the judge entered judgment in favor of the defendants on those two claims (counts II and III, respectively). On the claim for declaratory judgment (count I), the judge ruled that the lease terminated due to the material breach, but also ordered restitution to Banknorth in compensation for the improvements already completed.

*Discussion.* At trial and in posttrial motions, the defendants argued that the ATM kiosk is a trade fixture and therefore, under the terms of the lease, not a structure. This, they contended, meant that there was no breach, because the defendants were only required to get the consent of the owners before constructing structures, not trade fixtures. At trial, the judge declined to rule that the ATM kiosk was a trade fixture as matter of law, but allowed the defendants to argue the question to the jury. In her memorandum of law and order, the judge stated that "[t]he court rejected as a matter of law the defendants' claim that the kiosk was not a 'structure' but, rather, a 'trade fixture.' " This was error. Whether the ATM kiosk is a

trade fixture or structure is "a mixed question of law and fact." *Leblanc* v. *Friedman*, 438 Mass. 592, 596 (2003). Since there was no factual dispute over the nature of the ATM kiosk, the issue resolves itself into a question of contract law for the judge — whether the ATM kiosk is within the definition of trade fixture as used in the lease, and therefore not a structure. See *Lumber Mut. Ins. Co.* v. *Zoltek Corp.*, 419 Mass. 704, 707 (1995). See also *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973); *Thomas* v. *Christensen*, 12 Mass. App. Ct. 169, 174-175 (1981). Considering that question now, we conclude that the ATM kiosk is a trade fixture. See *Martha's Vineyard Land Bank Commn.* v. *Board of Assessors of W. Tisbury*, 62 Mass. App. Ct. 25, 27 n.3 (2004) ("an appellate court has plenary power of de novo review of all questions of law").

We begin our analysis with the language of the contract. We interpret the language of the contract "as a whole, in a reasonable and practical way, consistent with [the contract's] . . . background[] and purpose." *Vergato* v. *Commercial Union Ins. Co.*, 50 Mass. App. Ct. 824, 826 (2001), quoting from *USM Corp.* v. *Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 116 (1989). Where not inconsistent with the terms of the contract, we give words their ordinary meaning. See *Edmund Wright Ginsberg Corp.* v. *C. D. Kepner Leather Co.*, 317 Mass. 581, 587 (1945).

The words "trade fixture" are only used once in the lease in section nine, describing what property will stay with the real estate at the termination of the lease and what will remain the property of the tenants.[5] Although this section does not explicitly define trade fixture, it does establish a distinction between trade

---

[5]Section nine states, in relevant part:

"All buildings, *structures*, additions, alterations and improvements made by Lessee upon the demised premises shall become and remain the property of Lessor and shall not be removed at the termination of this lease, but shall be delivered up at the end of the term in good repair and condition, reasonable use and wear, and damage by fire or other inevitable accidents only excepted, and free from any and all encumbrances. All *trade fixtures* installed by Lessee or his assigns or subtenants and used in connection with the business conducted by him or them on said demised premises shall remain their property, as the case may be, and may be removed by Lessee from time to time and at

fixtures and structures under the lease. This distinction is crucial because if structure means "not a trade fixture," and if the ATM kiosk is a trade fixture, then the lease did not require the tenants to seek permission from the owners under the section that prevented construction of "future buildings or structures." See *Clark* v. *State St. Trust Co.*, 270 Mass. 140, 151 (1930) (in interpreting a contract, "words used in one undoubted sense in one place may be presumed to be used in the same meaning in another place in the writing").

Since the lease provides no further definition of trade fixture, we must apply the ordinary meaning of the phrase to determine if the ATM kiosk is a trade fixture. See, e.g., *Given* v. *Commerce Ins. Co.*, 440 Mass. 207, 212-213 (2003) (use of dictionary to determine ordinary meaning of term in insurance policy). The definitions found in several legal and real estate dictionaries are consistent in theme. See, e.g., Black's Law Dictionary 669 (8th ed. 2004) (defining trade fixture as "[r]emovable personal property that a tenant attaches to leased land for business purposes, such as a display counter"); Brownstone & Franck, The VNR Real Estate Dictionary 317 (1981) ("A fixture belonging to a lessee of commercial property, used in the normal course of conducting lessee's business, and considered personal property even though attached to the leased premises)."[6] See also Restatement (Second) of Property (Landlord & Tenant) § 12.2, at 432, 448-449 (1977). More significantly, these definitions are consistent with Massachusetts precedent. See, e.g., *Consiglio* v. *Carey*, 12 Mass. App. Ct. 135, 139 (1981), quoting from *Hanrahan* v. *O'Reilly*, 102 Mass. 201, 203 (1869) (twelve-foot high, exterior walk-in freezer, installed on concrete slab and enclosed in plywood shell at rear of

---

the termination of this lease. Any damage, however, caused by such removal shall be repaired by Lessee." (Emphasis added.)

[6]See also Friedman, Harris, & Lindeman, Barron's Dictionary of Real Estate Terms 458 (6th ed. 2004) ("articles placed in rented buildings by the tenant to help carry out trade or business"); Cox, Cox, & Silver-Westrick, Prentice Hall Dictionary of Real Estate 272 (pocket ed. 2001) ("personal property consisting of equipment, furniture, and other systems that are specific to a trade or business that have been placed in or on the premises for a specific purpose associated with the use of the property").

restaurant was found to be a trade fixture because it was installed by tenant for his business and could be removed without material injury to the premises and "without losing its essential character or value as a personal chattel"). In *Consiglio* v. *Carey*, pointing to the vintage of pertinent authorities, the court commented "[t]hat the cited cases are not notably recent is not an indication of their obsolescence but merely shows that settled law breeds little litigation." *Consiglio* v. *Carey, supra* at 139. That observation has only been reinforced by the paucity of reported decisions in the years since *Consiglio.*

Applying the standard definitions, we conclude that the ATM kiosk is a trade fixture under the terms of the lease.[7] As we have noted, the ATM kiosk is simply an ATM on a concrete pad, under a free-standing canopy, and in a drive-up lane in the parking lot. The equipment was installed by Banknorth, is the property of Banknorth, is specific to Banknorth's business, can be removed with little damage to the parking lot, and when removed does not lose its nature as personal chattel. Given these circumstances, the ATM kiosk is within the ordinary meaning of trade fixture. Because the ATM kiosk is a trade fixture under the lease, it cannot also be a structure under the lease, and therefore the tenants were not required to seek the owners' permission before its construction.[8] There was no breach of contract, and the lease should not have been terminated.[9]

Finally, we briefly address the owners' remaining claim that,

[7]In *Consiglio* v. *Carey, supra* at 137, there was a factual question that needed to be resolved in order to determine whether the item was a fixture or part of the real estate. See *Southern Mass. Broadcasters, Inc.* v. *Duchaine,* 26 Mass. App. Ct. 497, 499 (1988) (jury resolved factual dispute regarding trade fixture indicia). Here, however, where there is no dispute regarding the attributes of the ATM kiosk, the issue is the legal interpretation under the contract of the concept of trade fixture.

[8]The owners maintain that it is the definition of the word structure, rather than the term trade fixture, that is important. They contend that the ATM kiosk is a structure under a variety of definitions, including Natick zoning laws, and therefore permission was required. This argument misses the point that, although a broad definition of structure might include many items also considered trade fixtures, the lease specifically distinguishes between the two, meaning that a trade fixture cannot also be a structure under this lease.

[9]On the breach of contract claim, the judge entered judgment for the defendants essentially based on the jury finding that the owners suffered no damages from the breach of contract. Although we affirm the judgment for the

given the finding of an unfair or deceptive act, at a minimum, they should have been awarded attorney's fees under c. 93A (despite the fact that judgment entered in favor of the defendants on this count). We note that a "plaintiff suing under § 11 [of c. 93A] . . . cannot recover attorneys' fees for merely identifying an unfair or deceptive act or practice. Under § 11, that unfair or deceptive conduct must have had some adverse effect upon the plaintiff, even if it is not quantifiable in dollars." *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 718 (1989). Here, the jury found that the tenants and Banknorth had committed an unfair or deceptive act, but that the owners had suffered no harm whatsoever as a result. Cf. *Hershenow* v. *Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790, 797-802 (2006) (discussing "injury" requirement within the meaning of c. 93A, § 9); *Roberts* v. *Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 811, 813-814 (2006) (same). The judge's decision not to award attorney's fees under c. 93A was proper.[10]

Insofar as the judgment terminates the lease and requires the plaintiffs to reimburse the defendant Banknorth, N.A., for the cost of improvements, it is vacated, and a new judgment shall enter as to count I declaring that there was no breach of the lease and therefore the lease remains in full force and effect. As to counts II and III, the judgment is affirmed.

*So ordered.*

---

defendants on this claim, we do so for a different reason, that being there was no breach of contract. See *Schwartz* v. *Travelers Indemnity Co.*, 50 Mass. App. Ct. 672, 673 (2001) (appellate court may affirm for different reasons).

[10]Given our disposition of this appeal, we need not reach the issues of forfeiture and disgorgement or the other claims pressed by the parties.