Gordon, Robert B., J.
This case arises out of the termination of a commercial restaurant lease, and concerns the disputed disposition of certain trade fixtures left in the demised premises by the departing tenant. Plaintiff The Wilder Companies, Ltd., as managing agent of Theatre District, LLC (the “Landlord”) has brought suit against California Pizza Kitchen, Inc. (the ‘Tenant”). Landlord alleges that, at the time Tenant vacated its leased retail space in the Transporta *506 tion Building in downtown Boston (the “Premises”), it left behind a substantial volume of trade fixtures that it refused to remove despite Landlord’s request that it do so. These restaurant fixtures are alleged to include a pizza oven, walk-in refrigerator, ice chest, large counters, and restaurant seating booths. Landlord’s Complaint asserts a single claim for breach of contract, founded upon the contention that Tenant violated the parties’ lease (the “Lease”) when it failed to deliver possession of the Premises to Landlord in the condition required by the Lease (viz., removed of unwanted trade fixtures).
Presented for decision is Tenant’s Motion to Dismiss pursuant to Mass.R.Civ.P. 12(b)(6), in which it maintains that Landlord is contractually barred from compelling the removal of installed trade fixtures by its failure to have provided the 60-day written notice of such demand set forth in Section 13.3 of the Lease. Landlord counters that Tenant has misconstrued this provision of the Lease, and that the 60-day notice requirement of Section 13.3 is inapplicable to trade fixtures of the type in issue. At hearing, the parties acknowledged that the viability of Landlord’s contract claim raises a pure question law — to wit, the reasonable meaning to be accorded to the pertinent terms of the Lease — the resolution of which requires no resort to extrinsic evidence outside the four comers of the instrument. Having undertaken a careful review of the Lease agreement, it is the judgment of the Court that the Complaint fails to state a claim upon which relief can be granted. The defendant’s Motion to Dismiss will, therefore, be ALLOWED.
FACTUAL BACKGROUND
Landlord is the owner of certain property in the Theatre District of downtown Boston. In 1999, Landlord and Tenant entered into a written lease agreement, pursuant to which Tenant agreed to rent retail space within this property for the operation of a California Pizza Kitchen restaurant. The term of the Lease expired on May 31, 2014, at which time Tenant was required to vacate and deliver full possession of the Premises to Landlord.
On May 20, 2014, 11 days prior to expiration of the Lease, Landlord transmitted a letter to Tenant via email. In that letter, Landlord made formal demand that Tenant remove its installed trade fixtures from the Premises, and repair any resulting damage on or before May 31, 2014. Landlord cautioned Tenant that failure to remove its trade fixtures within the remaining 11-day window of the Lease’s pendency would subject it to default remedies. Tenant refused to comply-
The rights and obligations of the parties in respect to leasehold fixtures, and more particularly the matter of which party enjoys the right of post-Lease retention of fixtures and which party bears the cost of removing same, are addressed in two provisions of the Lease. These contract provisions must be quoted at length to understand precisely what they mean and how they fit together. The relevant Lease terms read as follows:
Section 13.3
[l][1]The Tenant shall not make any alterations, improvements and/or additions to the demised premises . . . without first obtaining, in each instance, the written consent of the Landlord ... [3] Any and all alterations, additions, improvements, and fixtures which may be made or installed by either the Landlord or the Tenant upon the demised premises and which in any manner are attached to the floors, walls or ceilings (including, without limitation, any linoleum or other floor covering of similar character which may be cemented or otherwise adhesively affixed to the floor, and any electrical, plumbing, heating, ventilating, and/or air-conditioning systems and equipment) shall remain upon the demised premises, and at the termination of this lease shall be surrendered with the demised premises as a part thereof without disturbance, molestation or injury; provided, however, that the Landlord shall notify Tenant approximately sixty (60) days prior to the end of the term of the lease whether the Landlord requires the Tenant to remove any or all of such additions, improvements and fixtures from the demised premises, and if the Landlord so elects, then the Tenant shall remove the same upon the termination of this lease (and repair any and all resulting damage) together with its personal properly referred to hereinbelow. [4] However the usual trade fixtures (including all restaurant equipment) and furniture which may be installed in the demised premises prior to or during the term hereof at the cost of the Tenant may be removed by the Tenant from the demised premises upon the termination of this lease if, but only if, the Tenant is not in default hereunder. [5] Further, the Tenant covenants and agrees, at its own cost and expense, to repair any and all damage to the demised premises resulting from or caused by such removal. [6] In no event shall the Tenant be entitled to remove any building components, including, but without limitation, the HVAC system, plumbing system, electrical system (including light fixtures and bulbs) and security gate(s) (if any). [7] The demised premises shall be delivered to Landlord at the expiration or earlier termination of this lease in a broom-clean condition and otherwise in the condition in which the same is to be maintained by Tenant under this lease, and at such expiration or earlier termination any and all property of Tenant shall be deemed abandoned by Tenant and shall become Landlord’s exclusive property or may be disposed of by Landlord, at Landlord’s option and Tenant’s cost and expense, without further notice or demand to Tenant and without any requirement to account for the same to or any other liability to or recourse by Tenant. . .
*507 Section 21.18 Holding-Over
Tenant recognizes that the Landlord must arrange for a replacement occupant long in advance of the expiration or earlier termination of the term of this lease, and incident to consummating a new lease for the premises demised hereunder, Landlord may be required to guarantee delivery of possession to the new occupant promptly upon the expiration or earlier termination of this lease. Accordingly, Tenant specifically agrees to remove all of its goods and effects and deliver full possession of the demised premises to Landlord not later than the date of the expiration or earlier termination hereof in order to avoid substantial, and perhaps irreparable, harm to Landlord. Tenant agrees that Landlord shall have all remedies available at law or in equity for Tenant’s failure so to do. Without limiting the foregoing, Tenant shall indemnify and hold Landlord harmless from and against any loss, cost or damage (including, without limitation, reasonable attorney’s fees) arising from Tenant’s failure to comply with its obligations under this Section 21.18.
In addition to all such remedies, Tenant further agrees that any holding over by it which has not been consented to in writing by Landlord shall be treated as a tenancy at sufferance at two times the annual minimum rent and one hundred percent (100%) of the other charges then applicable . . .
Following Tenant’s refusal to remove its trade fixtures from the Premises within the 11 days granted in Landlord’s May 20 notice, Landlord incurred costs in excess of $50,000 for the disposition of said fixtures and the Premises repairs necessitated thereby. On June 27, 2014, Landlord commenced the present action. Landlord seeks both to recover its incurred costs, and to enforce a claimed right under Section 21.18 to hold-over rent on account of Tenant’s purported failure to surrender full possession of the Premises in the condition required by the Lease.
In lieu of answering the Complaint, Tenant has filed a Motion to Dismiss for failure to state a claim upon which relief can be granted. Tenant’s position is that Landlord failed to provide it -with the 60-day notice required by Section 13.3 for imposing compulsory removal of installed fixtures, and that Landlord’s right to hold Tenant responsible for the cost of disposing of abandoned “property of Tenant” does not extend to such fixtures. The Court agrees.
DISCUSSION
The standard for addressing a Motion to Dismiss under Rule 12(b)(6) is well settled. A complaint will be dismissed when it fails to allege facts sufficient to show a plausible entitlement to relief under the law. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). Where, as here, the allegations of a claim depend upon a written instrument, “that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss.” Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1988).
The case at bar — both Landlord’s contract claim and Tenant’s defense thereto — turns entirely on the reasonable meaning of Section 13.3 of the Lease. Interpretation of an unambiguous contract is, of course, a question of law, see Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47 (1992); and an unambiguous agreement will be enforced according to its terms. Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992). Even where an agreement is ambiguous, however, if parol evidence fails to give rise to a genuine dispute as to the agreement’s meaning, the Court must interpret the contract as a matter of law. See Gross v. Prudential Ins. Co. of America, 48 Mass.App.Ct. 115, 119 (1999) (“The interpretation of a contract presents a question of law for the court, except to the extent disputed facts bear upon such interpretation” (internal quotations omitted)). Accordingly, inasmuch as the parties have disclaimed the existence of parol evidence extrinsic to the Lease that is probative of the instrument’s meaning, and have instead merely advocated for conflicting constructions of the document, the Court finds that the singular issue raised in defendant’s Motion to Dismiss is purely one of law and may be resolved in the precincts of Rule 12.
In the present case, a sentence-by-sentence parsing of Section 13.3 of the Lease makes plain that the contract claim asserted by the plaintiff cannot be reconciled with the intentions of the parties. The language and purposes of Section 13.3 seem unmistakably clear. The third sentence of this provision states that “any and all. . .fixtures which may be . . . installed by . . . the Tenant . . . and which in any manner are attached to the floors, walls or ceilings . .. shall remain upon the demised premises, surrendered with the demised premises as apart thereof.” (Emphasis added.) This language expresses in unambiguous terms the general understanding between these parties (and the normative rule in commercial leasing, see Southern Mass. Broadcasters, Inc. v. Duchaine, 26 Mass.App.Ct. 497, 499 (1988)) regarding the treatment of fixtures that have been attached to the Premises. Namely, fixtures installed by the Tenant become property of the Landlord upon termination of the Lease, and are deemed surrendered to Landlord as part of the demised Premises at such time. Contrary to the plaintiffs argument in opposition to defendant’s motion, nothing in the foregoing language suggests that this rule was meant to apply only to non-trade fixtures. Indeed, the quoted provision states quite explicitly that it applies to “any and all fixtures” that are attached to the Premises’ floors, walls or ceilings; and the examples that are referenced parenthetically [e.g., cemented flooring, electrical, plumbing, heating *508 and air-conditioning systems and equipment) are recited for descriptive purposes only. That the provision was not intended to exclude any categories of fixtures from its coverage is made clear by the “including, but not limited to” language which modifies the listing. Stated differently, the third sentence of Section 13.3 articulates a clear presumption that all fixtures of every type that are attached to the Premises — and whose removal would be costly and logistically burdensome — belong to the Landlord.[2]
Having set forth this general expectation for fixtures-related rights and removal, Section 13.3 goes on to hew an exception by way of proviso into it. That the proviso is meant to operate as an exception to an otherwise controlling rule is suggested in its phrasing and grammar. The provision of the third sentence quoted ante ends not with a period but with a semicolon; and the excepting language is introduced with the words “provided, however,” signaling its contradistinction from what has preceded it. The proviso states that, notwithstanding the general rule, the Landlord “shaii notify Tenant approximately sixty (60) days prior to the end of the term of the lease whether the Landlord requires the Tenant to remove any or all such additions, improvements and fixtures from the demised premises, and if the Landlord so elects then the Tenant shall remove the same upon the termination of this lease (and repair any and all resulting damage) together with its personal property referred to hereinbe-low.” (Emphasis added.)
Once again, the parties’ purpose in including this language in their Lease seems ciystal-clear. Even though Landlord is contractually invested with the right to retain as its property all previously installed fixtures that are attached to the Premises, it may elect to require Tenant to remove such fixtures at Tenant’s expense. To exercise this option, however, and in evident consideration of the time and expense associated with removing fixtures that have been attached to the floors, walls or ceilings of the building, the Lease requires Landlord to provide Tenant with at least 60 days’ prior notice of such demand. If it fails to afford Tenant that kind of advance notice, the Lease can only rationally be understood as precluding Landlord from compelling Tenant to remove the fixtures or requiring Tenant to bear the financial costs of its own removal thereof. If that is not the meaning of the proviso’s 60-day notice requirement (“provided, however, the Landlord shall notify . . .”), then this provision has no functional meaning at all. The Court declines to give the Lease such a self-defeating construction. See King Features Syndicate, Inc. v. Cape Cod Broad. Co., 317 Mass. 652, 654 (1945). Accord G.M. Abodeely Ins. Agency v. Commerce Ins. Co., 41 Mass.App.Ct. 274, 277 (1966) (“eveiy phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means of carrying out and effectuating the intent of the parties”).
Having thus recited the general rule (Landlord owns and retains attached fixtures post-tenancy), and then carved an exception into it (Landlord can compel Tenant to accept physical or financial responsibility for attached fixtures if it provides 60 days’ notice of such demand), the Lease goes on to craft a second and very differently intended exception to the rule. Immediately following the above-discussed proviso, in the fourth full sentence of Section 13.3, the Lease provides as follows: “However[,] the usual trade fixtures (including all restaurant equipment) andjurniture which may be installed in the demised premises prior to or during the term hereof at the cost of the Tenant may be removed by the Tenant from the demised premises upon the termination of this lease if, but only if, the Tenant is not in default hereunder.” (Emphasis added.) Once again, the intent of this language is manifest. As to all installed trade fixtures paid for by the Tenant, including restaurant equipment and furniture, Tenant shall have the option to remove such fixtures coincident with the termination or expiration of the Lease, so long as Tenant is not in default of the Lease. In other words, installed trade fixtures paid for by Tenant — a subset of the “any and all fixtures” referenced in the third sentence of Section 13.3 — will not become property of the Landlord at the end of the Lease if a non-defaulting Tenant elects to remove them at or prior to such termination or expiration at its own expense.[3] The purpose of this provision is clearly not, as plaintiff argues, to establish an entirely separate category of fixtures as to which the Landlord’s 60-day notice of compulsoiy removal duty does not apply. Nothing in the text of Section 13.3 remotely suggests such an intent, which would make no logical sense. The obvious reason for the lengthy notice is to afford Tenant sufficient time to remove structurally embedded fixtures from the Landlord’s Premises in those circumstances where it is being required to do so against its will. This is a matter of basic business fairness, and no purpose in reason would be served by allowing Landlord to spring a demand to remove attached fixtures on Tenant with little or no notice.
The exception embodied in the fourth sentence of Section 13.3 is addressed to an altogether different purpose. The objective of this exception is to shift the presumption as to which party has the option of fixtures retention (that is, the right to keep the same) in regard to trade fixtures that were paid for by the Tenant. Whereas the general rule of fixtures set forth in Section 13.3 grants the Landlord the power to determine whether or not it wants to retain fixtures that have been installed in its Premises, the excepting language of the fourth sentence of this section shifts such power to Tenant if it paid for the fixtures and is not in default under the Lease. That, and not any attempt to exempt trade fixtures from the 60-day notice requirement when Landlord exer *509 cises its right to compel their removal, is the obvious reason for this provision. With respect to trade fixtures paid for and installed by Tenant, the parties simply intended to invest Tenant with the right to remove such fixtures during the term of the Lease at its option and expense. Once again, this is a matter of both prevailing practice and basic fairness in the commercial real estate setting. No rational construction of the Lease can convert this Tenant-protective option to remove its own trade fixtures into a broadened right of the Landlord to compel their removal without affording Tenant the 60-day notice to which it is entitled.
The fifth and sixth sentences of Section 13.3 add clarity to the reach of Tenant’s textual right to remove trade fixtures. Neither, however, are directly implicated in the parties’ present dispute. The fifth sentence provides that Tenant shall bear all of the costs associated with the removal of trade fixtures that it elects to retain (including the costs of repairing any damage to the Premises). Tenant in this case did not exercise its right to remove trade fixtures from Landlord’s property, rendering this provision of the Lease inapplicable. The sixth sentence of Section 13.3 states that in no event shall Tenant be entitled to remove “building components” such as plumbing, electrical and HVAC systems, notwithstanding the fact that the Landlord may compel their removal per the first proviso to the general rule set forth in the third sentence of this section. In other words, even though Landlord can require Tenant to remove systemic fixtures of this nature, the Lease makes clear that Tenant’s option to remove trade fixtures that it paid for never extends to this more narrow subset of fixtures. Once again, the provision has no application to the present case — both because the fixtures at issue are customary trade fixtures rather than building components, and because Tenant at no time attempted to exercise a right of removal.
This brings us to the seventh and final sentence of Section 13.3, the provision of the Lease upon which plaintiff Landlord appears to place greatest reliance for its contract claim. This sentence provides that Tenant is required to deliver the demised Premises to Landlord in broom-clean condition; and, at the expiration of the Lease term, “any and all property of Tenant which has not been removed by Tenant shall be deemed abandoned by Tenant and shall become Landlord’s exclusive property or may be disposed of by Landlord, at Landlord’s option and at Tenant’s cost and expense, without further notice or demand to Tenant ...” (Emphasis added.) Plaintiff argues that the foregoing provision means that, if Tenant elects to leave trade fixtures in the Premises at the conclusion of the Lease, and even if it has never received a timely demand to remove them, Landlord may itself dispose of such fixtures and then send Tenant a bill. The Court does not agree.
Plaintiffs argument proceeds from the untenable premise that the seventh sentence’s reference to “property of Tenant” includes fixtures that have been installed in and attached to the Premises. This is plainly not the case. The general rule of Section 13.3 is that all attached fixtures constitute retainable property of the Landlord, unless Landlord elects to compel Tenant to remove them by providing a written demand with 60 days’ notice. Likewise, while Section 13.3 invests Tenant with the option of removing (at its own expense) installed trade fixtures that it paid for during the Lease term, even these fixtures will remain property of the Landlord upon expiration of the Lease if Tenant has not exercised its removal option. Plaintiff thus cannot logically argue that the fixtures Tenant left behind in the Premises at the conclusion of its Lease, never having received timely notice from Landlord that it was required to remove them, constitute “property of Tenant” whose costs of disposal can now be shifted to Tenant.
Reinforcing the conclusion that “property of Tenant” in this context does not include installed fixtures is the unambiguous language of the proviso in the third sentence of Section 13.3. That proviso reads as follows:
(P)rovided, however, that the Landlord shall notify Tenant approximately sixty (60) days prior to the end of the term of this lease whether the Landlord requires the Tenant to remove any or all of such additions, improvements and fixtures from the demised premises, and if the Landlord so elects, then the Tenant shall remove the same upon the termination of this lease (and repair any and all resulting damage) together with its personal property referred to hereinbelow.
(Emphasis added.)
The only other reference to Tenant’s “property” in Section 13.3 (“hereinbelow”) is the one appearing later in the seventh sentence of the section and upon which plaintiff places such emphasis for its breach of contract claim. The language quoted above, however, makes clear that “property of Tenant” in these circumstances is something altogether distinct from installed fixtures that have been attached to the Premises. This, of course, is why Section 13.3 provides that, if Landlord has exercised its compulsoiy removal option by providing Tenant a written demand with 60 days’ notice, Tenant must both remove “the same” (i.e., the installed fixtures) “together with its personal property referred to hereinbelow.” (Emphasis added.) The distinct reference to “personal property” highlighted by the phrase “together with” clearly signifies that such property is something different in type from installed fixtures for purposes of Section 13.3. Otherwise, the language would be meaningless surplusage, an interpretation disfavored at law. See supra. Accordingly, the portion of the seventh sentence of Section 13.3 to the effect that any “property of Tenant” that is not *510 removed from the Premises upon expiration of the Lease reverts to Landlord (who can then assess Tenant the costs of its disposition) does not apply to installed fixtures that were not the subject of a timely demand to remove.
Common sense compels this result. If the term “property of Tenant” in Section 13.3 were deemed to include attached fixtures, then this isolated clause of a single sentence would effectively wipe out the entire balance of a rather lengthy section of the Lease. The carefully balanced scheme of shifting rights and options regarding fixtures between Landlord and Tenant reflected in Section 13.3 would be rendered a virtual nullity; for the default result of neither parly exercising its rights (in the manner required) would be that Landlord could simply force Tenant to bear the full cost of fixture removal (and pay double-rent as a hold-over tenant at sufferance per Section 21.18). Landlord would never have to provide Tenant with the lengthy notice the parties clearly recognized was needed to protect Tenant from last-minute demands that it retrieve installed fixtures whose removal would be burdensome. Such a construction of “property of Tenant” subverts the evident intentions of Section 13.3, exposes Tenant to an unfair “gotcha” risk that could not reasonably have been contemplated by the parties, and must therefore be rejected.[4]
Applying the terms of the Lease as expounded ante to the facts of the present case, it is clear that plaintiffs Complaint states no contract claim upon which relief can be granted. The property which Tenant left in the Premises at the conclusion of its Lease — a pizza oven, walk-in refrigerator, large counters, ice chest and restaurant booths — are undeniably trade fixtures within the Lease’s definition thereof.[5] Tenant was thus free to remove such fixtures (at its expense) when it vacated the Premises at the end of May 2014. It elected not to do so, as was its right. At the same time, Landlord was equally free to compel Tenant to remove these fixtures (again, at its expense); but it was required under the plain terms of the Lease to make this request in writing no less than approximately 60 days prior to termination of the tenancy. The email letter that Landlord transmitted to Tenant on May 20 was undeniably non-compliant. It was not sent by registered or certified mail or by private express carrier (as required for such a notice by Section 21.14 of the Lease); and, even if this lapse could be excused, Landlord failed to afford Tenant the 60-day notice of compelled fixture removal to which it was entitled under Section 13.3 of the Lease.[6]
With neither party affirmatively exercising its rights in regard to fixtures removal, the Lease leaves the trade fixtures at issue in this case where they are — in the possession and ownership of the Landlord, who is free to do with them what it will. What Landlord may not do, however, is hold Tenant accountable for breach of contract, for there has been no such breach.
CONCLUSION AND ORDER
For the foregoing reasons, the defendant’s Motion to Dismiss is ALLOWED. The Complaint shall be dismissed with prejudice, and without costs.

 Bracketed numbers do not appear in the original text. They are being inserted by the Court in front of each sentence of this lengthy section of the Lease in order to facilitate ease of reference herein.

Plaintiff nevertheless argues in its opposition that the specification of systemic fixtures in the sentence’s parenthetical reflects an intention to limit the Landlord’s 60-day notice duty to these particular kinds of fixtures, and by implication excludes from such duly the “usual trade fixtures” referenced later in the fourth sentence of Section 13.3. If that were the parties’ intent, however, they would surely not have employed the expansive language they did (viz., “any and all... fixtures . . . including, without limitation”), and would instead have utilized the more narrow term they adopted in the sixth sentence of this section when referring to these very kinds of embedded systems. In that latter sentence, where the parties intended to identify the sub-species of fixtures that Tenant may not remove from the Premises at its own option, the Lease provides: “In no event shall the Tenant be entitled to remove any building components ', including, without limitation, the HVAC system, plumbing system, electrical system (including light fixtures and bulbs), and security gate(s) (if any).” (Emphasis added.) If the parties’ intent in Section 13.3’s third sentence had been to limit its coverage (and, with it, the 60-day notice required for Landlord-imposed fixtures removal) to so-called systemic fixtures, as the plaintiff now argues, they obviously possessed the vocabulary to do so. Indeed, they expressed precisely such an intent, by using the more limiting term “building components,” just three sentences later in the same section of their Lease. Having chosen not to use the term “building components” or “systemic fixtures” to narrow the category of fixtures as to which the 60-day notice of compulsory removal was required, the parties plainly had a very different intent.

A Tenant in default evidently forfeits its option to remove trade fixtures that it paid for in order to provide the Landlord with a certain degree of immediate recourse for the damage caused by the lessee’s default.

 Although not called upon to give content to this term, the Court presumes that “property of Tenant" in these circumstances is meant to echo the term “goods and effects” which appears in Section 21.18, and refers to property of the restaurant that is not “installed” or otherwise “attached” to the Premises as a fixture. This would include such items as dishes, flatware, linens, file cabinets, coat hangers, cash registers and the like — items that can be readily loaded on a truck and removed from a retail space without the time or expense needed to engage construction contractors. The seventh sentence of Section 13.3 implicitly recognizes that these are the sorts of items which, if left behind post-Lease, a landlord might either want to retain or dispose of without fear of facing a claim of conversion from its erstwhile lessee.

 Although it is unclear whether the ice chest was attached to the floor or walls of the Premises as Section 13.3 would require, the parties have in all events not identified this as a material issue. Both sides have proceeded in their papers on the understanding that all of the items left by Tenant in the Premises following expiration of the Lease qualify as trade fixtures. (And, even if the ice chest were a free-standing article, the costs of its removal would be de minimis.)

 The Court holds as a matter of law that the requirement of “approximately sixty (60) days” prior notice is not satisfied by notice of just 11 days. Plaintiff itself has not argued to the contrary.